**TIMBER RIDGE ASSOCIATES, a Wisconsin limited partnership, By Michael D. LERNER and Richard J. Bickler, general partners, on behalf of itself and all other property owners in the State of Wisconsin similarly situated, Plaintiffs,**

v.

**CITY OF HARTFORD, a municipal corporation, on behalf of itself and all other municipalities in the State of Wisconsin similarly situated, Defendants.**

Civ. A. No. 83–C–7.

United States District Court,
E.D. Wisconsin.

Jan. 10, 1984.

Alan Marcuvitz, Peregrine, Marcuvitz & Peltin, S.C., Milwaukee, Wis., for plaintiffs.

Michael P. May, Boardman, Suhr, Curry & Field, Madison, Wis., for defendants.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

The plaintiffs, Timber Ridge Associates, a limited partnership and its two general partners, claim that they have been forced by the City of Hartford to pay for municipal services they did not receive. They brought this § 1983 action to obtain a refund and to prevent Hartford from extracting similar payments from them in the future.

Timber Ridge owns several apartment properties in Hartford. Hartford owns and operates an electric utility for the benefit of the municipality. The utility supplies electricity to apartment buildings, including those owned by Timber Ridge, and to the tenants residing in the buildings.

When certain Hartford residents failed to pay their utility bills, Hartford's common council decided to require their landlords to pay instead. It met and passed a resolution which made the owners of property upon which delinquent customers resided responsible for paying the bills. In order to enforce its decision, the common council added these delinquent sums to the tax roll and placed a tax lien against the landlord's property. The common council asserted their action pursuant to Wis.Stat. Ann. § 66.60(16) (West 1983). That statute provides that:

(a) In addition to all other methods provided by law, special charges for current services rendered may be imposed by the governing body by allocating all or part of the cost to the property served. Such may include, without limitation because of enumeration, snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, sewer service and tree care....

(b) ... If not paid within the period fixed by the governing body, such a delinquent special charge shall become a lien as provided in Sub. (15) as of the date of such delinquency, and shall automatically be extended upon the current or next tax roll as a delinquent tax against the property and all proceedings in relation to the collection, return and sale of property for delinquent real estate taxes shall apply to such special charge.

Sometime after the resolution was passed, Timber Ridge received notice that the electric bills of several of its tenants were delinquent and, if not paid by December 1, 1982, those charges would be assessed as taxes and a tax lien would be placed against its property. The city did not receive any payments, so it placed the delinquent charges on Timber Ridge's property tax bills for the apartment properties in question.

Timber Ridge brought this § 1983 action to have the Hartford ordinance declared unconstitutional, to enjoin its enforcement, and to obtain a refund of all money which Hartford has received by means of this practice within the last six years.

Hartford has moved to dismiss this action for, among other reasons, lack of jurisdiction. Since I believe that the Tax Injunction Act, 28 U.S.C. § 1341, prohibits me from taking any action in this case, I grant Hartford's motion and dismiss this action.

Section 1341 provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The statute embodies the long-standing reluctance of federal courts to interfere with the fiscal operations of the states. See *Matthews v. Rogers*, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932). Federal courts have given § 1341 broad application on the grounds that "interference with a State's internal economy is inseparable from a federal action to restrain state taxation." *Moe v. Salish and Kootnai Tribes*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976) (citing *Great Lakes Co. v. Huffman*, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943)). Furthermore, the Supreme Court has held that the comity principles underlying § 1341 bar damage actions as well as actions seeking injunctive relief. *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 115–116, 102 S.Ct. 177, 185–186, 70 L.Ed.2d 271 (1981).

The special assessments and charges authorized by Wis.Stats. § 66.60 and collected through the tax system are an important source of revenue to the state. *See* Klitzke & Edgar, *Wisconsin Special Assessments*, 62 Marq.L.Rev. 171 (1978). Since this action, seeking a refund and declaratory and injunctive relief against future charges, would "in every practical sense operate to suspend collection" of these special charges, *see Great Lakes*, 319 U.S. at 299,

63 S.Ct. at 1073, I believe that it is barred by § 1341 and principles of federal-state comity. *Id.* at 115, 102 S.Ct. at 185. *See also United Gas Pipe Line, Inc. v. Whitman*, 595 F.2d 323, 330 (5th Cir.1979); *28 East Jackson Enterprises, Inc. v. Cullerton*, 523 F.2d 439, 441, n. 2 (7th Cir.1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976).

Timber Ridge contends that § 1341 does not apply to this case. It argues that the special charges placed upon the tax rolls and enforced by way of tax liens are not a "tax under State law" as the term is used in the statute. Its argument is based on Wisconsin law: Since these charges are not "enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs," *DePere v. Public Service Commission*, 266 Wis. 319, 325, 63 N.W.2d 764, 768 (1954), they are not "taxes".

However, the scope of § 1341 is not to be defined according to state tax law.

[T]he meaning of the term "tax under State law" … should be determined as a matter of federal law by reference to Congressional policies underlying the Tax Injunction Act, rather than by adoption of state tax labels developed in entirely different legal contexts.

*Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 374 (3d Cir. 1978). *See also Tramel v. Schrader*, 505 F.2d 1310, 1315 (5th Cir.1975).

In defining the scope of § 1341, courts have decided that its purposes are best served by giving a broad reading to the phrase "tax under State law." *See American Trucking Associations, Inc. v. O'Neill*, 522 F.Supp. 49, 54 (D.Conn.1981), *citing Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522, 524, 101 S.Ct. 1221, 1233, 1234, 67 L.Ed.2d 464 (1981). For example, § 1341 is broad enough to cover special street and sewer assessments. In *Group Assisting Sewer Proposal—Ansonia v. City of Ansonia*, 448 F.Supp. 45 (D.Conn. 1978), the court explained:

The threshold question raised is whether a municipality's sewer assessment is a "tax under State law." The Connecticut Legislature undoubtedly intended such assessments to be a "tax" in the general sense; enforcement provisions of the statute refer to the tax collector and property tax liens.

*Id.* at 46. *See also Tramel* at 1316; *Alnoa G. Corp. v. City of Houston*, 563 F.2d 769, 771 (5th Cir.1977), *cert. denied*, 435 U.S. 970, 98 S.Ct. 1610, 56 L.Ed.2d 62 (1978). Actions to dissolve tax liens have also been prohibited by § 1341. In *Dawson v. Childs*, 665 F.2d 705, 710 (5th Cir.1982), the court held:

> Although we have come across no case involving application of section 1341 to an action to enjoin a tax lien, we believe it follows naturally from a broad reading of the Act. In dissolving a lien on property, a federal court interferes with the state's fiscal program just as surely as if it enjoined collection or assessment of the tax itself. Indeed, if the lien offers the only means of obtaining tax revenues due, as may often prove the case, the two issues blur into one.

*Id.* at 710. In light of how broadly § 1341 has been construed, I believe that it applies to § 66.60(16) special charges, too.

The only issue which remains is whether Wisconsin makes available to Timber Ridge a "plain, speedy and efficient remedy" under its laws. I believe that Wis.Stat., § 74.73 provides the remedy which § 1341 requires.

Wis.Stats. 66.60(16)(b), a subsection of the statute which authorizes these special charges, states plainly that "all proceedings in relation to the collection, return and sale of property for delinquent real estate taxes shall apply to such special charge." Section 74.73 states:

> Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the town, city or village which collected such tax in the manner prescribed by law for filing claims in other cases.

Together, §§ 66.60(16)(b) and 74.73 provide a plain, speedy and efficient opportunity for Timber Ridge to raise its constitutional objections, along with the state law issue of whether § 66.60(16) applies to municipal electric services. *See Matthews* at 525, 52 S.Ct. at 219; *Rosewell* at 514, 101 S.Ct. at 1229. Accordingly, I grant Hartford's motion and ORDER that this action be DISMISSED.