PETTIGREW, J.
|2In the instant appeal, Gene P. Bonvilli-an, Assessor of Terrebonne Parish, and Rich Bailey, Assessor of Ouachita Parish, (“the assessors”) challenge the trial court’s August 9, 2007 judgment granting a preliminary injunction in favor of plaintiffs, ANR Pipeline Company, Tennessee Gas Pipeline Company, and Southern Natural Gas Company (“plaintiffs”), and enjoining the Louisiana Tax Commission (the “Commission”) from holding revaluation hearings on plaintiffs’ public service pipelines. For the reasons set forth below, we vacate the trial court’s judgment and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
The history of this case dates back to October 2000, when the first appeal in the case was lodged with this court. In ANR Pipeline Co., v. Louisiana Tax Com’n, 2000-2251 (La.App. 1 Cir. 12/22/00), 774 So.2d 1261, writ denied, 2001-0250 (La.4/20/01), 790 So.2d 633, we considered that very appeal and issued a ruling concerning ANR’s challenge of the ad valorem taxes assessed against its public service pipelines. There have been numerous other appeals and writ applications in this matter since that date, including the judgment previously rendered by this court in ANR Pipeline Co. v. Louisiana Tax Com’n, 2005-1142 (La.App. 1 Cir. 9/7/05), 923 So.2d 81, writ denied, 2005-2372 (La.3/17/06), 925 So.2d 547, cert. denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38 (2006) (“ANR VI”) and our most recent decision rendered in ANR Pipeline Co. v. Louisiana Tax Com’n, 2008-1148 (La.App. 1 Cir. 10/17/08), 997 So.2d 92, 2008 WL 4603393 (“ANR VII”). While the underlying facts of this case are well known to both this court and the parties herein, a brief review of the facts and procedural history preceding the August 9, 2007 judgment is necessary for a complete understanding of the court’s analysis that follows.
Plaintiffs provide natural gas transportation, storage, and balancing services in Louisiana and in interstate commerce and are regulated by the Federal Energy Reg *107 ulatory Commission pursuant to the Natural Gas Act, 15 U.S.C. § 717, et seq. Plaintiffs each own ^interstate natural gas transmission pipelines in Louisiana, which properties are classified and taxed as public service properties under La. R.S. 47:1851(K) and (M).[1]
During the years 1994 through 2003 (“the tax years at issue”), a number of intrastate natural gas, oil, and other liquid pipeline companies were regulated by the Louisiana Public Service Commission as provided in La. R.S. 30:551(A) and qualified as public service companies under La. R.S. 47:1851(K). The pipelines of these companies, however, were assessed by local assessors at fifteen percent (15%) of fair market value, while the public service properties of plaintiffs were assessed at twenty-five percent (25%) of fair market value.
For each tax year at issue, plaintiffs paid their ad valorem taxes under protest. Specifically, plaintiffs challenged that portion of taxes assessed in excess of fifteen percent (15%) of fair market value. Plaintiffs then filed individual suits against the Commission for declaratory judgment and for refunds of the taxes paid under protest. Plaintiffs argued that the assessed values of their properties were calculated at twenty-five percent (25%) of fair market value, while the assessed values of other pipeline public service taxpayers that fall within the statutory definition of pipeline companies were calculated at fifteen percent (15%) of fair market value. Plaintiffs asserted that this disparate treatment violated the uniformity requirement of the Louisiana Constitution, the Lequal protection and due process clauses of the Louisiana and United States Constitutions, and the commerce clause of the United States Constitution. Plaintiffs also alleged that La. R.S. 47:1851(K) is unconstitutional. These suits were consolidated for trial.
Following a bench trial in early 2005, the trial court rendered declaratory judgment in favor of the plaintiffs, finding that the actions of the Commission in the administration of Louisiana’s ad valorem tax scheme, as it pertained to plaintiffs’ public service pipelines, violated the equal protection and due process clauses of the Louisiana and United States Constitutions. The trial court pretermitted decision on the constitutionality of La. R.S. 47:1851(K) and (M) and remanded the matter to the Commission with instructions that the Commission require the parish assessors to assess the public service pipelines of the plaintiffs for each of the tax years at issue and calculate taxes based on fifteen percent *108 (15%) of those assessments. The trial court further ordered the Commission to issue plaintiffs a full refund, plus interest, of the difference between the amounts paid for each year and the reassessed amount no later than September 20, 2005. Plaintiffs appealed this decision, which resulted in our decision in ANR VI.
In ANR VI, this court affirmed the declaratory judgment rendered in favor of plaintiffs, both as to the constitutional violations and as to the remedy involving the parish assessors and the reassessment of the plaintiffs’ public service pipelines for tax purposes. With regard to the refunds, if any, that might be issued following reassessment, this court noted as follows:
The judgment appealed from mandates that the Commission issue to all plaintiffs a full refund, plus interest, of the difference between the amounts paid for each year and the reassessed amount no later than September 30, 2005, within six months following the date of judgment. The Commission has answered the appeal and prayed that the judgment be modified to extend the deadline for completion of reassessment to six months following finality of judgment. Due to the delays occasioned by this appeal, we find that an extension of the deadline for issuance of refunds is warranted. Accordingly, we hereby amend the judgment to provide that the deadline for completion of reassessment is six months from the date the judgment becomes final.
ANR VI, 2005-1142 at 31, 923 So.2d at 99-100.
| ñWhen the Louisiana Supreme Court denied plaintiffs’ writ application in ANR
VI, our decision therein became final, prompting a series of orders by the Commission relating to the reassessment of plaintiffs’ properties by the various parish assessors. Pursuant to the Commission’s orders, the parish assessors began the reassessments. Although there is some dispute as to how many were accomplished within the six month deadline provided for in ANR VI, it is clear that many were completed.[2] According to the record, while reassessment resulted in a decrease in taxes in some parishes, it resulted in an increase in taxes in other parishes.
In response to the reassessments, plaintiffs lodged 359 protests with the various parish Boards of Review challenging the correctness of the reassessments. After receiving a number of adverse determinations from the parish Boards of Review, plaintiffs appealed the assessments to the Commission. Shortly after lodging those appeals with the Commission, plaintiffs filed a motion to enforce judgment with the trial court alleging that by failing to timely complete the reassessment and refund process, the Commission had lost jurisdiction to conduct any further proceedings in this matter. The parish assessors subsequently filed a petition of intervention in support of the Commission and an opposition to plaintiffs’ motion to enforce judgment. In response thereto, plaintiffs objected to the petition of intervention on the grounds that it did not state a cause of action. In the alternative, plaintiffs moved that the intervention be dismissed as untimely. These matters, along with the motion to enforce judgment, were brought for hearing before the trial court on June 13, 2007. The trial court rendered judgment *109 on August 6, 2007, attempting to follow this court’s intent as set forth in our ruling in ANR VI. The trial court dismissed the petition of intervention filed by the parish assessors. With regard to the motion to enforce judgment, it was denied in part and granted in part. The trial court held that plaintiffs were entitled to an immediate refund of all property taxes paid | fiunder protest for the tax years at issue before the Commission could proceed to hear plaintiffs’ appeals from the reassessments of their public service pipelines. The trial court further ordered that any assessors who had not completed the reassessment process within the original six month deadline were barred from participating in any further proceedings and ordered that any refunds that were paid pursuant to its judgment would be full and final.[3]
According to the record, the revaluation hearings were scheduled to begin on June 19, 2007, before the Commission. On June 18, 2007, plaintiffs obtained a temporary restraining order enjoining the Commission from conducting the hearings, and the application for preliminary injunction was set for hearing on June 25, 2007. Following a hearing on June 26, 2007,[4] the trial court entered a preliminary injunction in favor of plaintiffs, enjoining the Commission from holding revaluation hearings on plaintiffs’ public service pipelines “until such time as plaintiffs receive a full refund of all ad valorem property taxes paid under protest, plus interest, from the parish.” A judgment in accordance with the trial court’s findings was signed on August 9, 2007. It is from this judgment that the assessors have appealed, assigning the following specifications of error:
1. The trial court erred in entering in-junctive relief without a showing of irreparable harm;
2. The trial court erred in entering a preliminary injunction when no action for injunction was pending before it;
3. The trial court erred in entering a post-trial injunction in proceedings in which it had been divested of jurisdiction;
It4. The trial court violated the restrictions of Art. II, § 2 of the Louisiana Constitution by enjoining the executive branch’s exercise of its original jurisdiction;
5. The trial court exceeded its authority and improperly exercised supervisory jurisdiction in proceedings arising under its original jurisdiction;
6. The trial court exceeded its authority and improperly exercised supervisory jurisdiction in proceedings in which there was no basis for the assertion of appellate jurisdiction;
7. The trial court erred in entering in-junctive relief in proceedings in which *110 the real parties in interest were not parties;
8. The trial court erred in holding that the Tax Commission could not conduct hearings until the plaintiff pipelines had received a full refund of taxes paid under protest.
DISCUSSION
A preliminary injunction may be issued during the pendency of an action for a permanent injunction on a prima facie showing that the petitioner is entitled to the relief sought, that he will prevail on the merits, and that the potential losses are those for which money damages are inadequate or are incapable of measurement by pecuniary standards. See La. Code Civ. P. art. 3601; Chandler v. State, Dept, of Tramp. & Development, 2002-1410, p. 6 (La.App. 1 Cir. 3/28/03), 844 So.2d 905, 909. In Chandler, this court addressed the discretionary nature of injunctions as follows:
The jurisprudence interpreting Article 3601 establishes that, while the trial court has broad discretion in deciding whether to grant injunctive relief, injunction is an extraordinary remedy and should only issue where the party seeking it is threatened with irreparable loss without adequate remedy at law. A showing of irreparable injury is not necessary when the deprivation of a constitutional right is involved. Moreover, there is no need to prove irreparable harm when the petitioner alleges the defendant is acting in direct violation of prohibitory law. A party must make a prima facie showing that he will prevail on the merits of the suit. Before issuing a preliminary injunction, the trial court should consider whether the threatened
harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest.
Chandler, 2002-1410 at pp. 6-7, 844 So.2d at 909 (citations omitted).
On appeal, the assessors argue that plaintiffs have failed to prove that they will suffer irreparable injury if the Commission conducts the revaluation hearings regarding their appeals challenging the correctness of the reassessments of their public service | ¿pipelines. The assessors also maintain that because the preliminary injunction under review was entered after the trial was concluded, a judgment was rendered, and an appeal was taken, the trial court was divested of jurisdiction in the underlying proceedings, and it was therefore, a per se abuse of discretion by the trial court to enter a post-trial preliminary injunction in proceedings in which a permanent injunction was not even requested. In response, plaintiffs assert that the assessors lack standing to challenge the preliminary injunction because their attempt to intervene in these proceedings was denied.[5] Moreover, plaintiffs maintain that the trial court had authority to enjoin the proceedings until the refunds were issued and that the preliminary injunction was properly granted. While both sides have presented compelling arguments in support of their respective positions, it is unnecessary for us to delve into a detailed discussion.
Based on our extensive review of the instant record, including the transcript of the hearing on the preliminary injunction, it is clear that the trial court issued the preliminary injunction based on its misin *111 terpretation of our ruling in ANR VI, i.e., that there be an immediate refund of all taxes paid under protest for the tax years at issue before the Commission could proceed to hear plaintiffs’ appeals from the reassessments of their public service pipelines. As we detailed in ANR VII, that was never our intention. Rather, in ANR VI we simply affirmed the original judgment of the trial court, whereby the matter was remanded to the Commission with instructions that the Commission require the assessors to reassess plaintiffs’ public service pipelines for each of the tax years at issue, that the taxes be calculated based on fifteen percent (15%) of those assessments, and that the Commission issue plaintiffs a full refund, plus interest, of the difference between the amounts paid for each year and the reassessed amounts. The only difference between the trial court’s original judgment and our ruling in ANR VI was that we recognized the need for an extension of the deadline for completion of lathe reassessment and refund process and provided that the extension would be no later than six months from the date our judgment in ANR VI became final. Accordingly, it is apparent that the trial court issued the preliminary injunction in the instant case in error. Thus, the preliminary injunction must be vacated and the revaluation hearings allowed to proceed in order for the reassessment/refund process that was envisioned by the trial court and affirmed by this court in both ANR VI and ANR VII to be completed in a timely manner.
CONCLUSION
For the above and foregoing reasons, we vacate the preliminary injunction issued by the trial court on August 9, 2007, and remand the matter to the trial court for further proceedings consistent with this opinion and our opinion in ANR VII. All costs associated with this appeal are assessed against plaintiffs, ANR Pipeline Company, Tennessee Gas Pipeline Company, and Southern Natural Gas Company.
PRELIMINARY INJUNCTION VACATED; MATTER REMANDED FOR FURTHER PROCEEDINGS.

. The relevant portions of La. R.S. 47:1851 provide as follows:
K. "Pipeline company” means any company that is engaged primarily in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this state, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a "natural gas company” under the Federal Natural Gas Act, 15 U.S.C. §§ 717-717w, because that person is engaged in the transportation of natural gas in interstate commerce, as defined in the Natural Gas Act.
M. “Public service properties” means the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company, and water company. For each barge line, towing, and other water transportation company or private car company, only the major movable property owned or used but not locally assessed or otherwise assessed in this state in interstate or interparish operations shall be considered as public service property.

. In brief to this court, plaintiffs allege that "[ajlthough most parish assessors completed their valuation proceedings before August 25, 2006, a significant number did not.” However, the parish assessors assert on appeal that each of the assessors, with the exception of the assessor for Tangipahoa Parish, completed reassessment within the six month deadline.

. This judgment was appealed by both plaintiffs and the assessors and resulted in our decision in ANR VII, wherein we clarified that the process as originally envisioned by the trial court and affirmed by this court in ANR VI was as follows: (1) complete the reassessments of plaintiffs' public service pipelines; (2) calculate the taxes on those properties based on fifteen percent (15%) of those assessments; and (3) refund the difference, if any, between the amounts paid for the tax years at issue and the reassessed amounts. ANR VII, 2008-1148 at 18, 997 So.2d at 104. Thus, in ANR VII, we reversed the trial court’s August 6, 2007 judgment and remanded with instructions that the trial court (1) remand the matter to the Commission for completion of the reassessment/refund process and (2) establish any deadlines necessary for the completion of the process. ANR VII, 2008-1148 at 19, 997 So.2d at 104-05.

. Although the matter was originally set for hearing on June 25, 2007, the minutes reflect that the matter was passed on that date and reassigned to June 26, 2007.

. We addressed this issue in ANR VII, finding that although the assessors’ intervention was properly dismissed, they still had standing to appeal based on La.Code Civ. P. art. 2086. See ANR VII, 2008-1148 at 14, 997 So.2d at 100-01.